UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STAR SHIPPING A/S,

         Plaintiff,

  - against -

JAKHAU SALT COMPANY PVT LTD.
a/k/a JAKHAU SALT COMPANY PRIVATE LTD.,
a/k/a JAKHAU SALT COMPANY PVT LTD.,
CHENNAI,

         Defendant.
-----------------------------------------------------------------X

08 Civ. _____

ECF CASE

RECEIVED JAN 11 2008

## VERIFIED COMPLAINT

Plaintiff, STAR SHIPPING A/S ("Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, JAKHAU SALT COMPANY PVT LTD., a/k/a JAKHAU SALT COMPANY PRIVATE LTD. a/k/a JAKHAU SALT COMPANY PVT LTD., CHENNAI (hereinafter "Defendant"), alleges, upon information and belief, as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and this Court's federal question jurisdiction, 28 United States Code § 1331.

2. At all times material to this action, Plaintiff Star Shipping was, and still is, a foreign company duly organized and operating under the laws of Norway.

3. Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity organized and existing under foreign law, with an office at Chennai, India.

4. At all material times Plaintiff was the disponent Owner of the motor vessel "STAR LEIKANGER" (hereinafter the "Vessel").

5. At all times material to this action, pursuant to a charter party dated August 1, 2005, Plaintiff had the Vessel on long term charter from Head Owners, Masterbulk Pte Ltd. ("Masterbulk"). *See charter party with Head Owners annexed hereto as Exhibit "1."*

6. Pursuant to a charter party dated October 11, 2007, Plaintiff time chartered the Vessel to Defendant for the carriage of cargo. *See Star Shipping-Jakhau charter party annexed hereto as Exhibit "2."*

7. Particularly, the Vessel was to load salt at Jakhau, India for discharge in Vietnam.

8. The Vessel arrived at the load port on October 14, 2007 and began to load at the anchorage from a barge, the "DHANALAXMI."

9. At approximately 3:12 a.m. (local time) on October 15, 2007, the barge made contact with the port quarter fracturing the shell plating in way of a fuel oil storage tank.

10. As a result, fuel oil spilled into the sea until around 6:30 a.m. when a bunker transfer prevented further spillage.

11. The local authorities then commenced a clean-up operation and the Vessel was not permitted to depart Jakhau until the costs had been paid by Head Owners, Masterbulk.

12. As a result of the incident, various allegations and/or claims have been or will be raised against the Head Owners for the various damages caused by the collision and oil spill.

13. Despite the fact that pursuant to the terms of the charter party that Defendant is wholly or substantially liable for the alleged damages caused by the collision and oil spill, the various claimants elected to assert their claims in the first instance against the Vessel and Masterbulk as Head Owner of the Vessel as is their right.

14. In order to secure the release of the Vessel, Masterbulk was required to pay the the following amounts for which the Defendant is liable under the charter party:

| | |
|---|---|
| Claim from Mundra Port INR: | $41,002.05 |
| Claim from Coast Guard INR: | $126,037.36 |

15. Master Bulk also incurred other losses in relation to the collision and oil spill for which Defendant is liable under the charter party, and which can be broken down as follows:

| | |
|---|---|
| Superintendent's attendance: | $6,032.00 |
| Repair invoices in Vung Tau: | $1,000.00 |
| DNV attendance: | $924.00 |
| Superintendent's attendance to facilitate repair in Vung Tau and to clear condition of class for shipside | $1,766.00 |
| Correspondent's fees and expenses: | $11,600.00 |
| Lawyer's fees and expenses: | $5,125.00 |
| Surveyors fees and expenses: | $5,405.00 |

16. Masterbulk demanded payment from Plaintiff, Star Shipping, for the above claims/losses in the amount of $198,891.41.

17. Reserving all of its rights, Star Shipping subsequently paid Masterbulk's claim in the amount of $198,891.41, for which Defendant is liable under the charter party.

18. Plaintiff is entitled to indemnity from Defendant in respect of the claims/damages it paid to Masterbulk, which the Defendant is wholly or substantially liable under the provisions of the charter party.

19. In addition, Plaintiff is entitled for recover from Defendant its damages for lost time incurred as a result of the collision and oil spill, for which the Defendant is wholly or substantially liable, under the charter party.

20. Defendant has failed to pay hire/damages for lost time in the approximate amount of $355,661.81 which is due and owing under the charter party. *Please find invoice detailing outstanding hire attached hereto as Exhibit "3".*

21. Pursuant to clause 8 in the Star Shipping- Jakhau charter party which provides that Defendant is responsible for all cargo handling, any costs/damage/liabilities arising therefrom are for Defendant's account.

22. Furthermore, in the alternative, Plaintiff maintains that Defendant is liable for the any and all damages arising out of the oil spill and sub-sequent clean-up under Clause 12, line 71, line 14, line 33, clause 6, and/or clause 4 of the charter party.

23. Plaintiff is also liable for any and all damages arising out of the oil spill and sub-sequent clean-up under English common law, and more specifically the "ISLAND ARCHON" matter.

24. As a result of Defendant's breach of the charter party, as best as may be reasonably approximated, Plaintiff has and/or will sustain damages in the total principal amount of $554,553.22, exclusive of interest, arbitration costs and attorney's fees.

25. Pursuant to the charter party all disputes between the parties are to be submitted to arbitration in the city of London, England with English Law to apply.

26. In due course, Plaintiff will initiate arbitration proceedings against Defendant on its claims.

27. Despite due demand, Defendant has failed and/or refused to pay or provide security for the sums due and owing to Plaintiff.

28. Interest, costs and attorneys' fees are routinely awarded to the prevailing party in arbitration pursuant to English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts in the arbitration:

|   |   |   |
|---|---|---|
| A. | Principal Claim: | $554,553.22 |
| B. | Estimated Interest on claims: 3 years at 8%, compounded quarterly | $148,754.35 |
| C. | Attorneys' fees: | $100,000.00 |
| D. | Arbitration costs/expenses: | $50,000.00 |
| **Total** | | **$853,307.57** |

29. The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant.

30. The Plaintiff seeks an order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B. That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 et seq.

C. That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant, in the amount of $853,307.57 calculated to date to secure the Plaintiff's claim, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D. That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

E. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F. That this Court award Plaintiff its attorneys' fees and costs incurred in this action; and

G. That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: January 11, 2008
New York, NY

                    The Plaintiff,
                    STAR SHIPPING A/S

By: _____
Patrick F. Lennon
Nancy R. Peterson
LENNON, MURPHY & LENNON, LLC
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax

## ATTORNEY'S VERIFICATION

State of New York  )
                   )  ss.:  Manhattan
County of New York )

1. My name is Nancy R. Peterson.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organizations with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:     January 11, 2008
           New York, NY

                                          Nancy R. Peterson